## PHILLIPS v. IOLA PORTLAND CEMENT CO.

(Circuit Court of Appeals, Eighth Circuit. November 12, 1903.)

No. 1,888.

1. ANTI-TRUST ACT—TEST OF VALIDITY OF CONTRACT OR COMBINATION UNDER.

The test of the violation of the anti-trust act of July 2, 1890 (26 Stat. 209, c. 647 [U. S. Comp. St. 1901, p. 3200]), by a contract or combination, is its effect upon competition in commerce among the states. If its necessary effect is to stifle or to directly and substantially restrict interstate commerce, it falls under the ban of the law, but if it promotes, or only incidentally or indirectly restricts, competition, while its main purpose and chief effect are to promote the business and increase the trade of the makers, it is not denounced or avoided by that law.

2. SAME—CONTRACT RESTRICTING TERRITORY WITHIN WHICH PURCHASERS MAY SELL.

A contract of sale by a manufacturer to jobbers of some of its product, to be shipped across state lines to the latter, whereby the parties agree that the purchasers shall not sell, ship, or allow any of the product thus purchased to be shipped, outside of a certain state, is not in restraint of trade or illegal under the act of July 2, 1890.

(Syllabus by the Court.)

125 F.—38

In Error to the Circuit Court of the United States for the Western District of Missouri.

John Charles Harris (Edward F. Harris, on the brief), for plaintiff in error.

James C. Williams, for defendant in error.

Before SANBORN, THAYER, and VAN DEVANTER, Circuit Judges.

SANBORN, Circuit Judge. This is a writ of error to review a judgment for the plaintiff below, the Iola Portland Cement Company, a corporation, against Thomas H. Phillips, in an action for damages for the breach of a contract of sale of cement. The company was a manufacturer of cement in the state of Kansas. The defendant below, Phillips, was a member of the copartnership of William Parr & Co., who were merchants engaged in business at Galveston, in the state of Texas. On January 24, 1901, Parr & Co. made a contract with the cement company whereby they agreed to purchase of it, during the year 1901, 50,000 barrels of Iola portland cement to be delivered free on board the cars at Iola, in the state of Kansas, and to pay therefor $1.20 per barrel. They further agreed "not to sell said cement, ship same, or allow same to be shipped," outside of the state of Texas. Under this contract they accepted and paid for 24,580 barrels of the cement, and refused to accept 25,420 barrels thereof. The cement company brought an action against them to recover the damages which it sustained by the failure of the purchasers to accept and pay for these 25,420 barrels, and Phillips, the only defendant served with process, answered that the contract was illegal and void under Act Cong. July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200], because it provided that Parr & Co. should not sell the cement, ship it, or allow it to be shipped, without the state of Texas.

It is now settled by repeated decisions of the Supreme Court that the test of the validity of a contract, combination, or conspiracy challenged under the anti-trust law is the direct effect of such a contract or combination upon competition in commerce among the states. If its necessary effect is to stifle competition, or to directly and substantially restrict it, it is void. But if it promotes, or only incidentally or indirectly restricts, competition in commerce among the states, while its main purpose and chief effect are to foster the trade and enhance the business of those who make it, it does not constitute a restraint of interstate commerce within the meaning of that law, and is not obnoxious to its provisions. This act of Congress must have a reasonable construction. It was not its purpose to prohibit or to render illegal the ordinary contracts or combinations of manufacturers, merchants, and traders, or the usual devices to which they resort to promote the success of their business, to enhance their trade, and to make their occupations gainful, so long as those combinations and devices do not necessarily have a direct and substantial effect to restrict competition in commerce among the states. Hopkins v. U. S., 171 U. S. 578, 592, 19 Sup. Ct. 40, 43 L. Ed. 290; Anderson v.

U. S., 171 U. S. 604, 616, 19 Sup. Ct. 50, 43 L. Ed. 300; U. S. v. Joint Traffic Ass'n, 171 U. S. 505, 568, 19 Sup. Ct. 25, 43 L. Ed. 259; Addyston Pipe & Steel Co. v. U. S., 175 U. S. 211, 245; 20 Sup. Ct. 96, 44 L. Ed. 136; U. S. v. Trans-Missouri Freight Ass'n, 166 U. S. 290, 339, 340, 342, 17 Sup. Ct. 540, 41 L. Ed. 1007; U. S. v. Northern Securities Co. (C. C.) 120 Fed. 721, 725. The application of this rule to the facts of the case in hand leaves no doubt that there was nothing in the contract before us obnoxious to the provisions of the anti-trust law of 1890. The Iola Cement Company had no monopoly of the manufacture or sale of cement in the United States. It was surrounded by competing manufacturers, and the contract which it made with Parr & Co., of Galveston, had no direct or substantial effect upon competition in trade among the states. It left the manufacturers who were competing with the plaintiff for the trade of the country free to select their customers, to fix their prices, and to dictate their terms for the sales of the commodities they offered, so that in this regard no restraint whatever was imposed. If it had the effect to restrain Parr & Co. from using the product which they purchased to compete with other jobbers or manufacturers in the country beyond the limits of the state of Texas, this restriction was not the chief purpose or the main effect of the contract of sale, but a mere indirect and immaterial incident of it. The agreement of sale imposed no direct restriction upon competition in commerce among the states, did not constitute a restraint of that commerce, and was not obnoxious to the provisions of the act of July 2, 1890.

For a more extended consideration of the principles upon which this decision is based, for a citation, review, and analysis of the authorities which sustain them and which compel the ultimate conclusion which we have reached in this case, reference is made to the opinion of this court in Whitwell v. Continental Tobacco Co. (which is filed herewith) 125 Fed. 454. A repetition of the citation and review of authorities, and of the more exhaustive discussion of principles there indulged in, would be useless here, and it is omitted.

The evidence disclosed the fact that shortly after the expiration of the year within which the defendants had agreed to receive and pay for the cement the plaintiff sold the 25,420 barrels, which the defendants refused to take, for $1.10 per barrel. The president of the plaintiff testified that the cost of selling this cement was about 10 cents per barrel, that it did not cost any more to sell the cement which had been previously sold to Parr & Co. than it did to sell any other cement, but that the cost of selling any cement was about 10 cents per barrel. The court below instructed the jury that, if they believed that the cost of selling this cement was 10 cents per barrel, they might allow that amount as a part of the damages which the plaintiff was entitled to recover. This instruction is assigned as error. But it was manifestly right. The plaintiff had once incurred and paid the cost of selling the cement in question to Parr & Co., and had obtained a valid contract for its purchase price. Their failure to comply with this agreement imposed upon the plaintiff the necessary expense of making a second sale of that portion of the cement already sold which the defendants refused to accept.

It is assigned as error that the court below refused to admit in evidence a telegram from the president of the Iola company to Parr & Co., dated January 24, 1901, the day of the date of the contract, to the effect that the plaintiff would guaranty a rate of freight of five cents per hundred less than Kansas City rates to all Texas points. But there was no error in this ruling. The telegram was not admissible to establish any agreement to guaranty this rate of freight, and a breach of that agreement as a defense to the action, because no such defense was pleaded. It was not admissible to modify or change the written contract of January 24, 1901, because if it was sent before or at the time that the contract was executed it was merged in that contract and became ineffective, and if it was sent after that contract was made it was not pleaded and had no place in the trial of this case.

Another alleged error specified is that the court below refused to admit in evidence a letter from the plaintiff to the defendants, dated February 10, 1902, in which they wrote that they had not done an agency business and requested a proposition. It is contended that this letter was competent to establish the fact that the relation between the plaintiff and the defendants under the contract in suit was that of vendor and vendee, and not that of principal and agent. Conceding that this letter had a tendency to establish that fact, its rejection did not prejudice, and could not have prejudiced, the defendants, because the relation of vendor and vendee was proved by the contract, because the case was tried, and the court charged the jury, and this court has determined the case, upon that theory, and error without prejudice is no ground for reversal.

The judgment below is affirmed.