COLE MOTOR CAR CO. v. HURST et al.

(Circuit Court of Appeals, Fifth Circuit.	December 14, 1915.	Rehearing
Denied January 17, 1916.)

No. 2715.

1. APPEAL AND ERROR ⬉171—REVIEW—CHANGE OF THEORY.

Where, in an action on contracts claimed to violate the state anti-trust laws, plaintiff sued on the contracts as contracts of consignment, but by the court's ruling that they were contracts of sale was compelled to proceed as if they were contracts of sale, this enforced change of attitude did not preclude an appellate court from regarding the contracts in their true light as contracts of consignment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1053–1063; Dec. Dig. ⬉171.]

2. CONTRACTS ⬉153—VALIDITY—ADOPTING CONSTRUCTION UPHOLDING CONTRACT.

If contracts between a manufacturer of motor cars and a dealer, claimed to violate the anti-trust laws of the state, were open to two reasonable interpretations, one defeating the manufacturer's claim for a balance due and the other enforcing it, the court would be at liberty to adopt the latter interpretation.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 734; Dec. Dig. ⬉153.]

3. COMMERCE ⬉8—INTERSTATE COMMERCE—APPLICATION OF STATE LAWS.

Contracts between a manufacturer of motor cars and a dealer, designated as a distributor, provided that cars would be invoiced to the distributor. at the regular catalogue price, subject to certain discounts constituting his profits; that he should have the exclusive right to sell the manufacturer's cars in certain designated territory. within the state of Texas, and not elsewhere; that remittances for all cars shipped to him would be made the same day cars were sold; that, when cars were shipped direct to his agents, sight drafts would be drawn and a check mailed by the manufacturer on Monday of each week, covering commissions due on shipments for which payments had been received during the previous week; that the distributor would keep the cars insured in the manufacturer's name until sold and paid for; that if the contract was canceled the manufacturer would take over any new cars then on the distributor's show floor at the invoice price with carload freight added; and that if the distributor canceled the contract he would take and pay for all cars on hand or in transit. The contract was made in Indiana, and the cars were to be shipped from Indiana f. o. b. to the distributor in Texas. *Held*, that the transaction was a consignment, and not a sale, and the contract was an interstate one, the validity of which was governed by the federal anti-trust laws (Act July 2, 1890, c. 647, 26 Stat. 209), and not by the anti-trust laws of Texas (Vernon's Sayles' Ann. Civ. St. 1914, § 7796 et seq.).

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 5; Dec. Dig. ⬉8.]

4. MONOPOLIES ⬉17—CONTRACTS—VALIDITY—RESTRAINT OF TRADE.

The contract was valid under the anti-trust laws, both of the United States and of Texas, as it in no way restrained competition or trade.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 13; Dec. Dig. ⬉17.]

In Error to the District Court of the United States for the Northern District of Texas; Edward R. Meek, Judge.

⬉For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Action by the Cole Motor Car Company against Charles F. Hurst and another. Judgment for defendants, and plaintiff brings error. Reversed, and new trial granted.

Etheridge, McCormick & Bromberg, of Dallas, Tex., for plaintiff in error.

Crane & Crane and Jed C. Adams, all of Dallas, Tex. (Clendenen & Simmons, of Ft. Worth, Tex., on the brief), for defendants in error.

Before PARDEE and WALKER, Circuit Judges, and SPEER, District Judge.

SPEER, District Judge. The Cole Motor Car Company is a corporation and citizen of Indiana. Charles F. Hurst is a citizen of Texas, and of the district in which the instant action is brought. The Cole Company and Hurst made an agreement by which Hurst was to receive, and become the distributor of the Cole Company's automobiles, for certain counties in Texas. Benjamin J. Tillar became guarantor, to the extent of $10,000, that Hurst would comply with his contract. The Cole Company shipped and delivered to Hurst, under the contract, machines in considerable number. Hurst disposed of the same, but omitted to pay to the Cole Company a balance due thereon of $11,491.27. The action was brought to recover this amount, and Tillar was joined as guarantor and defendant. Having received the automobiles of the plaintiff company, and having failed to pay therefor in large part, Hurst now interposed the defense that his contract was violative of the anti-trust law of the state of Texas, and was therefore void. The pretense was that the contract restricted the territory in which Hurst should sell the automobiles, and also restricted the right of the plaintiff company to sell to others in the same territory. Tillar defended upon the ground that certain misrepresentations were made to secure his execution of the guaranty contract, and, further, that he had been discharged from his liability as guarantor by the failure of the plaintiff company to notify him of defaults on the part of Hurst.

Upon the conclusion of the hearing, counsel for the defendants requested the direction of a verdict in their favor. The court gave that direction in the language following:

"Gentlemen of the Jury: The court construes the contracts between the plaintiff and the defendant Hurst to be contracts of sale, and under the law is of the opinion they are void, because in conflict with the anti-trust laws of this state, for which reason alone I charge you to return your verdict for the defendants."

To this exception is taken. Undoubtedly Hurst should not be relieved of his obligation to pay for the cars he had received under his contract, unless, under all circumstances, a contract between himself and the consignor was violative of the public policy of the state. We have attentively scrutinized the record, to discover such violation. There were several contracts, but they were practically the same as to terms and conditions. Hurst was to be paid a commission on each sale. He was to remit to the plaintiff company for each car as it was

sold by him. The cars were to be invoiced to him at a price to the purchaser fixed in advance by the company. This was subject to a discount varying from 25 to 27½ per cent. from the list price. The contract is somewhat voluminous, but the material clause is the following:

"The distributor shall have the exclusive right to sell Cole motor cars in the following territory, and not elsewhere, until the expiration of this contract. That part of the state of Texas north of and including the following counties: Panola, Rusk, Cherokee, Anderson, Freestone, Limestone, Falls, Bell, Burnet, Llano, Mason, Menard, Schliecher, Crockett, Crane, Winkler."

Hurst, as we have seen, is designated as distributor. It appears from the record that, previously to the execution of the contracts in question, Hurst, as a member of a firm, had acted as the agent of the Cole Company in putting their machines on the market. When the firm's agency ended, Hurst, as an individual, was continued as agent until the first contract decreed on was made. The crucial question here is: Did the first and subsequent contracts, with certain typewritten addenda, continue or constitute Hurst as agent or consignee, or did they evidence a sale of the motor cars to him? See Welch v. Phelps & Bigelow Windmill Co., 89 Tex. 653–656, 36 S. W. 71.

[1, 2] That the plaintiff regarded the contracts as of consignment is made plain by the fact that the original action was brought as upon contracts of consignment. When, however, the court, over the plaintiff's objection and exception, held them to be contracts of sale, the plaintiff was driven to proceed as if they were sale contracts. Having saved its exception, this was its only resource, and we are not precluded by this enforced change of attitude from regarding the contracts in their true light. Indeed, if there were two reasonable interpretations of the contract, one defeating the plaintiff's meritorious claim, and the other enforcing it, the court would be at liberty to adopt the latter.

[3, 4] From the record it appears that Tillar, the guarantor, was notified by Kuqua, the agent of the plaintiff company on the ground, that the Cole Company was about to make a contract with Hurst to ship goods on consignment, to be paid for in money as sold; that Hurst was to pay the freight on these goods, and was to insure them in the name of the Cole Motor Car Company; and that Hurst's revenue from the transaction would be the difference between the price the goods were billed to him and what he got for them. This testimony is not in dispute. Again, the first addendum to the first contract provides:

"Remittances for all cars shipped to the distributor under this agreement will be made in funds at par in Indianapolis the same day cars are sold. When cars are shipped direct to the distributor's agents, S/D [by which we presume sight draft is meant], will be drawn direct, and check mailed by the manufacturer on Monday of each week, covering commissions due on shipments for which payments have been received during the previous week."

Had it been a sale contract, Hurst would, of course, have deducted the commissions himself.

Again, it is provided:

"The distributor will keep all Cole motor cars insured in the name of the manufacturer until they are sold and paid for."

This presupposes the insurable interest, and therefore the title, in the Cole Company. It was clearly a commission contract. Kuqua, uncontradicted, testifies:

"We did not consider Mr. Hurst owed us until the cars were moved out of his possession, and the account was kept that way from the beginning."

Again, there was a provision for the cancellation of the arrangement, and in that event the manufacturer was to take over any new cars that should be on the distributor's show floor, at the invoice price, with carload freight added. No condition whatever was attached to the manufacturer's reserved right to take back the machines whenever it chose to do so. It retained unqualified rights of dominion and control, which were inconsistent with the theory that the transactions were sales.

On the other hand, Hurst agrees that if he cancels the contract he will take and pay for all cars on hand or in transit. Such provisions are not unusual in factorage contracts. See Milburn Mfg. Co. v. Peak, 89 Tex. 211, 34 S. W. 102.

As to the amount of Hurst's interest, it appears that the goods were to be invoiced to him at the regular catalogue price, subject to a discount of 25 per cent. on some, and 27½ per cent. on some other models. This discount, of course, constituted his profits, unless, indeed, he sold the cars for less than the catalogue price, in which event his commission was to be the difference between the price at which the cars were sold and the discount, after the list price had been taken off, which was the invoice price. The other paragraphs of the contract provided for the number and type of cars to be shipped Hurst, the manner of advertising, and various other comparatively trivial details.

Now the contract was made in Indiana. The cars were to be shipped from Indiana f. o. b. to Hurst in the state of Texas. Obviously this was an interstate shipment on an interstate contract. Obviously, also, since the transaction was interstate, its validity must be determined by the anti-trust laws of the United States, rather than the anti-trust laws of the state of Texas; but under neither system have we been able to discover in the contract any violation of the state or national law, either in letter or principle. There is such a wealth of paramount authority upon this vital topic that it seems superfluous to offer citations. Generally it may be said that these laws were intended to prevent unlawful combinations in restraint of trade, to prevent the arbitrary fixation of the prices of certain commodities, in order to prevent or lessen competition in the manufacture, transportation, sale, or purchase of any commodity. Now, how can it be said that the contract before the court is obnoxious to the general purposes of the law? On the contrary, its effect is to foster the trade of the plaintiff company, and enhance its business to make se-

cure its returns. This sort of an arrangement is not obnoxious to the law. Phillips v. Cement Co., 125 Fed. 593, 61 C. C. A. 19.

It will be seen that it was not a contract which conveyed title to Hurst, and brought his control of the machines under the operation of the Texas law. Surely the Cole Company had the right to determine that its agents should sell its cars at its own price. True, he was given the privilege of selling in certain counties, and no others, and he was restricted from selling the cars of other motor car companies in the same counties; but this method is an ordinary instrumentality by which manufacturers and others display and dispose of their goods and commodities, and make sure of payment, if they can. It is not restrictive of trade in any sense. Insurance companies, and many other occupations and trades, parcel out their territory to different agents, and make similar arrangements. That it could not defeat competition is obvious to the court. There are a multitude of other companies from whom purchasers can readily obtain motor cars, varying in little, if anything, from the perfectibility of the car made by the plaintiff company. It is common knowledge that most, if not all, of such motor companies avail themselves of similar arrangements. The public, indeed, finds it no small task to avoid the competition and solicitations of the agents or consignees of such companies. Periodicals of every description portray, advertise, and enlarge upon the variety and superiority of their excellencies. There surely, then, has been no restraint of this trade. Was it not, then, easily possible that in the flourishing counties of the Lone Star state enumerated in the contract, notwithstanding the same, any one might have purchased a Ford, a Cadillac, a Pierce-Arrow, a Packard, a Chalmers, a Hudson, or any other of the multitudinous machines which are being constantly manufactured and offered for sale at widely varying prices? Where, then, is the restraint of trade in this transaction? It exists in the refusal of the defendant to pay the balance he owes for the automobiles he received, which, since capital is timorous, may have, for the future, some restraining effect upon similar arrangements.

We conclude, therefore, that this was a contract of consignment, and not of sale, and that it is in no sense obnoxious to the statute of the state of Texas, that the conclusion of the learned judge of the District Court to that effect was erroneous, and that it should be reversed, and a new trial granted; and it is so ordered.