## KONECKY v. JEWISH PRESS et al.

(Circuit Court of Appeals, Eighth Circuit. March 15, 1923.)

No. 6086.

1. **Commerce** ⬡16—Interstate circulation of newspapers is "interstate commerce."

Circulation of a newspaper throughout the country is "interstate commerce."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

2. **Monopolies** ⬡12(1)—Unlawful conspiracy, under Anti-Trust Act, must directly affect interstate commerce.

A conspiracy, to be unlawful under Sherman Anti-Trust Act, § 2 (Comp. St. § 8821), must be one the direct intent of which is a restraint on interstate commerce, and where such effect is merely incidental, it is not within the statute.

**3. Monopolies ⊗⇒28—Petition held not to state cause of action for conspiracy in restraint of interstate commerce.**

 Allegations of a conspiracy to cause plaintiff to be driven from the state by attempting to injure his social standing, to have him discharged from his employment, to compel him to vacate the premises where he lived, and to induce subscribers to his newspaper to refuse to take the same, will not support an action for damages, under Sherman Anti-Trust Act, § 7 (Comp. St. § 8829), as for conspiracy in restraint of interstate commerce, merely because plaintiff's paper has an interstate circulation.

In Error to the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Action at law by Isaac Konecky against the Jewish Press and others. From an order of dismissal, plaintiff brings error. Affirmed.

John O. Yeiser and John O. Yeiser, Jr., both of Omaha, Neb., for plaintiff in error.

Henry Monsky, Carl C. Katleman, and William Grodinsky, all of Omaha, Neb., for defendants in error.

Before KENYON, Circuit Judge, and SYMES, District Judge.

KENYON, Circuit Judge. Plaintiff in error, Isaac Konecky, filed in the United States District Court for the District of Nebraska a petition against the Jewish Press, a corporation, Harry A. Wolf Company, a corporation, Harry Malasock, Morris Levy, Harry Lapidus, Morris Milder, William L. Holzman, Philip Sher, and Henry Monsky, defendants, alleging that he was the editor and publisher of the Jewish Bulletin, a newspaper published in the city of Omaha, and circulating weekly in the states of Nebraska and Iowa, and several other states; that the newspapers were sent by mail every week as a part of the nation's interstate commerce. Plaintiff sets forth the purpose of the newspaper and claims that defendants entered into an unlawful combination and conspiracy to destroy said paper, and to prevent its publication and the issuance of the same to any subscriber, and that in order so to do they conspired together to cripple plaintiff's earning ability, destroy his property, injure his social standing, and drive him from the state of Nebraska, and sets forth very specifically various acts against him on the part of and by the several defendants, such as blackballing the plaintiff when he attempted to join a Jewish organization known as Bnai Brith, boycotting to induce Jewish subscribers to refuse to take the Jewish Bulletin, attempting to induce the county treasurer of Douglas county to discharge plaintiff from his employ, attempting to prevent the plaintiff acting as a delegate to the Jewish Welfare Federation, the publication of another paper known as the Jewish Press, the circulation of false reports to dissuade advertisers and subscribers from patronizing plaintiff's paper, the inducing of the printers of plaintiff's paper to join the conspiracy, the notification to him to vacate the premises where he lived, the hiring of detectives to shadow him, and other acts which seemed to indicate personal malice toward the plaintiff.

The court sustained motions of defendants to strike various parts of this petition, and at the same time it was ordered that the cause be

⊗⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

dismissed, at plaintiff's costs. A mere glance at the petition apprises one of the peculiar nature of this case. The theory seems to be that the acts set forth constitute a conspiracy in restraint of trade and commerce among the several states, as forbidden by section 2 of the Sherman Anti-Trust Act (Comp. St. § 8821), and give a cause of action under section 7 of said act (section 8829), which provides as follows:

"Any person who shall be injured in his business or property by any other person or corporation by reason of anything forbidden or declared to be unlawful by this act, may sue therefor in any Circuit Court of the United States in the district in which the defendant resides or is found, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the costs of suit, including a reasonable attorney's fee."

[1] It may be conceded that the circulation of newspapers throughout the country is interstate commerce. Blumenstock Bros. Advertising Agency v. Curtis Publishing Co., 252 U. S. 436, 40 Sup. Ct. 385, 64 L. Ed. 649; International Text-Book Co. v. Pigg, 217 U. S. 91, 30 Sup. Ct. 481, 54 L. Ed. 678, 27 L. R. A. (N. S.) 493, 18 Ann. Cas. 1103. In the oft-quoted and great case of Gibbons v. Ogden, 9 Wheat. 1, 189 (6 L. Ed. 23), Chief Justice Marshall said:

"Commerce, undoubtedly, is traffic, but it is something more—it is intercourse."

This court has said in Butler Bros. Shoe Co. v. United States Rubber Co., 156 Fed. 17, 84 C. C. A. 183:

"Importation into one state from another is the indispensable element, the test, of interstate commerce, and every negotiation, contract, trade, and dealing between citizens of different states, which contemplates and causes such importation, whether it be of goods, persons, or information, is a transaction of interstate commerce."

[2] The fact, however, that the transportation of newspapers from one state to another constitutes interstate commerce, and that plaintiff here alleges that some of the papers published by him were transported in interstate commerce, is not sufficient on which to predicate his cause of action. The conspiracy condemned by the Sherman Act is one, the direct intent and effect of which is a restraint upon interstate commerce, and not one where the effect is merely incidental. Hopkins v. United States, 171 U. S. 578, 19 Sup. Ct. 40, 43 L. Ed. 290; Anderson v. United States, 171 U. S. 604, 19 Sup. Ct. 50, 43 L. Ed. 300; Field v. Barber Asphalt Paving Co., 194 U. S. 618, 24 Sup. Ct. 784, 48 L. Ed. 1142; Phillips v. Iola Portland Cement Co., 125 Fed. 593, 61 C. C. A. 19; Arkansas Brokerage Co. v. Dunn & Powell, 173 Fed. 899, 97 C. C. A. 454, 35 L. R. A. (N. S.) 464.

In United Mine Workers of America v. Coronado Coal Co., 259 U. S. 344, at page 410, 42 Sup. Ct. 570, at page 583 (66 L. Ed. 975), the Supreme Court, speaking of the relation of coal mining to interstate commerce said:

"Coal mining is not interstate commerce, and obstruction of coal mining, though it may prevent coal from going into interstate commerce, is not a restraint of that commerce, unless the obstruction to mining is intended to restrain commerce in it, or has necessarily such a direct, material, and substantial effect to restrain it that the intent reasonably must be inferred."

In Silverstein v. Local No. 280, Tailors' Union, etc., et al., 284 Fed. 833, this court but recently said:

"The evidence fails to show that the appellees' obstruction to the appellant's tailoring was intended by them to restrain his alleged interstate commerce, or that it necessarily had such a direct, material, and substantial effect to restrain it that the appellees' intent so to do reasonably must be inferred."

[3] If the acts set forth in the petition are sufficient to show a conspiracy, it would be one that, only in the most remote degree and incidentally, could affect interstate commerce. It would be rather farfetched to claim that, because plaintiff was blackballed in a Jewish organization, or his subscribers boycotted, or attempts made to have him discharged from his employment, or to prevent him going as a delegate to some welfare association, or that notice was served upon him to vacate premises, or that he was pursued by detectives, it was sufficient to show a conspiracy from which an intention could be inferred of an attempt to monopolize any part of the trade or commerce among the several states. It would be a perversion of the Sherman Anti-Trust Act to hold that this petition states a substantial cause of action thereunder. Such act was enacted for a beneficent purpose and in response to the demands of an economic situation. It was to prevent the growing tendency on the part of great accumulations of property and wealth to exercise a monopolistic control of the necessities of life. The act has been weakened somewhat by judicial decision. To hold that the petition in this case states a cause of action for recovery of treble damages would further weaken it by making it ridiculous.

The action of the court in dismissing the petition was correct, and the same is affirmed.