The Chicago, Wilmington and Vermilion Coal Co.
*v.*
The People of the State of Illinois.

*Opinion filed October 16, 1899.*

1. Mines—*mine inspection fees are not taxes.* Mine inspection fees are not taxes, but are imposed as compensation for presumably beneficial services rendered.

2. Same—*provision of act requiring payment of mine inspection fees is constitutional.* The provision of section 11 of the act on mines, as amended in 1895 and 1897, (Laws of 1895, p. 252; Laws of 1897, p. 269;) requiring mine owners to pay the inspection fees charged by the State mining inspectors, is a valid exercise of the police power and does not violate any provision of the constitution.

3. Same—*constitution does not deprive legislature of its right to provide for mine inspection fees.* The requirement of section 29 of article 4 of the constitution, that the General Assembly shall pass laws for

the protection of operative miners in reference to ventilation and escapement shafts, does not deprive the legislature of its right, in the exercise of its police power, to provide for the payment of inspection fees by mine owners.

4. SAME—*effect of failure of Mine Inspection act to limit number of inspections.* The failure of the Mine Inspection act to limit the number of inspections which may be made does not authorize daily or unnecessary inspections, to the destruction of the owner's business, as the inspectors are expressly forbidden to do any act tending to the injury of miners or operators of mines.

APPEAL from the Circuit Court of Sangamon county; the Hon. ROBERT B. SHIRLEY, Judge, presiding.

The plaintiffs, the People of the State of Illinois, brought suit against the defendant coal company to recover on account of inspection fees of the State mine inspector for certain mines theretofore inspected. The suit is brought to recover for the fees provided for under an act entitled "An act providing for the health and safety of persons employed in coal mines," approved May 28, 1879, and amendments thereto. The case was tried under a stipulation as to the facts.

It appears that the appellant owns six coal mines in this State, in each of which more than six men are employed. One of these mines is in the second mining district and five are in the first district. Between the first day of November, 1895, and the first day of July, 1897, in the first district, the mines were inspected twenty-two times, for which the aggregate sum of $216 was charged, and between the first day of July, 1897, and the twenty-seventh day of April, 1898, seven inspections were made, for which $70 was charged. The mine in the second district, between the first day of November, 1895, and the twenty-seventh day of April, 1898, was inspected four times, for which $40 was charged. The aggregate of the charges for the inspections thus made was $326. The defendant, by the stipulation, admitted the amount was due if the plaintiff was entitled to recover, and submitted two propositions of law to be held, to the effect there

could be no recovery under either count of the declaration, which were refused and exception taken. A motion in arrest of judgment was entered, which was denied, and a finding and judgment had in favor of the plaintiffs for $326, to which the defendant excepted.

The question is presented whether the act of July 1, 1895, and the amendment thereto in force July, 1897, providing for the payment into the State treasury by owners or operators of coal mines of this State of the charges made by State mine inspectors for inspecting the mines, are valid enactments.

Charles W. Thomas, (George S. House, of counsel,) for appellant.

E. C. Akin, Attorney General, (C. A. Hill, and B. D. Monroe, of counsel,) for the People.

Mr. Justice Phillips delivered the opinion of the court:

Section 29 of article 4 of the constitution is as follows: "It shall be the duty of the General Assembly to pass such laws as may be necessary for the protection of operative miners, by providing for ventilation when the same may be required, and the construction of escapement shafts, or such other appliances as may secure safety in all coal mines, and to provide for the enforcement of said laws by such penalties and punishments as may be deemed proper." This provision requires the legislature to pass such laws as may be necessary, etc., and leaves to that body the determination of the policy of the State as to what legislation is necessary to conform to its requirements.

The legislature has seen proper, in the act entitled "An act providing for the health and safety of persons employed in coal mines," approved May 28, 1879, and in force July 1, 1879, and by the amendments thereto, to

require certain duties to be done and performed by the owner, operator or manager of a coal mine. Some of these duties are as follows: Section 1 provides that the owner shall make or cause to be made an accurate map, to be furnished to the State inspector of mines of the district. Section 2 provides the inspector may make a map at the expense of the owner, should he neglect or refuse so to do. Section 3 is as to the manner of construction of escapement shafts, etc. Section 4 is as to the ventilation of mines. Section 5 requires that bore holes shall be kept twenty feet in advance of each working place, under certain circumstances. Section 6 is as to hoist-ways, and who may be employed, etc. Section 7 is as to operating the hoist-ways. Section 8 is as to the fencing the shaft. Section 11 provides for the division of the State into districts, for the appointment of inspectors, and prescribes their duties and fixes their salaries. This latter section was amended in 1895. Prior to that time the inspector was paid wholly by the State, but after the amendment of 1895, and by the amendment of 1897, it was provided that fees might be charged, which were required to be paid by the mine owner. It is these two amendatory statutes which the appellant contends are unconstitutional, as placing a burden that is unreasonable and unjust onto the mine owner.

The object and purpose of the statute are the protection of miners working in coal mines. Whilst the act is an effort on the part of the General Assembly to strictly comply with section 29 of article 4 of the constitution, by providing for the ventilation of mines, the construction of escapement shafts, and such other appliances as shall secure safety in all coal mines, the General Assembly has seen proper to include a provision for the preparation of maps and the filing of the same with the chief mine inspector of the district, and that on neglect or default of the owner to make such map the inspector may make the same at his expense,—and this is one of the

requirements of the statute which has been held constitutional by this court.    In *Daniels* v. *Hilgard*, 77 Ill. 640, it was held (p. 643): "Our legislature, in an act having for its avowed object the providing for the health and safety of persons employed in coal mines, has thought it proper to incorporate this provision for the making of a map.    The law-making powers elsewhere, as it is seen in their laws for the same object, have adopted this same provision.  This would seem to indicate as the legislative understanding that the provision is one in aid of the accomplishment of the purpose of such acts,—the protection of persons engaged in such mines; a proper part of the system adopted to that end.    The question is properly one of legislative determination.  A court should not lightly interfere in such case.  The legislature must have manifestly transcended its province for it to do so.  We are of opinion that it is not for a court to say that the provision here, which is called in question, is anything more than a fair and reasonable police regulation with reference to the subject matter of the act, which the legislature, in its discretion, has seen proper to adopt, and that it should not be set aside as unconstitutional."

To a much greater extent the provisions of section 11, which prescribe the duties of the inspectors, and require his reports and statements to be posted in a conspicuous place, showing the condition of the mine, and what, in his judgment, is necessary for the protection of the lives and health of persons employed in such mine, etc., are an exercise of the police power of the State.    The examination of the condition of the mine would also necessarily require the inspector to examine and report as to whether the manner of construction of escapement shafts, air shafts and the ventilation of the mine is in conformity with the requirements of the statute.    Inspections are necessary in determining health and quarantine laws, and also with reference to the examination of articles to be used as food, and it never has been held that a provision

looking to the inspection of certain articles that may be offered for sale for the purposes of human food, or a law providing for inspection with reference to health, is an improper exercise of the police power. Nor could it be held that the provision of the statute with reference to the appointment of inspectors for coal mines, who are to discharge the duties imposed upon them by section 11, is not a proper exercise of the police power of the State. The very purpose and object of the statute are in regard to the health and safety of miners, and requiring that mine owners should permit an inspection of their mines for this purpose is but an exercise of such police power.

We do not understand the contention of the appellant to be, however, that these provisions of the statute are an improper exercise of the police power, but understand the contention is that the provisions of the statute which require a fee to be paid for such inspection by the mine owner are an improper exercise of the police power. In was held in *Morgan's Steamship Co.* v. *Louisiana Board of Health*, 118 U. S. 455, that an inspection fee imposed by the State of Louisiana on a vessel passing a quarantine station, for examination as to her sanitary condition and the ports from which she came, is a compensation for services rendered the vessel, and not a tax imposed, within the meaning of the provision of the constitution concerning a tonnage tax imposed by the States, and that the act imposing such fee is a valid enactment.

Inspection fees are not taxes, but are imposed under the principle that they are compensation for services rendered in and about making such inspection, which is presumably beneficial to the person upon whom the fees are imposed under and by virtue of the general police powers of the State. *City of Charleston* v. *Rogers*, 2 McCord, 495; Cooley on Taxation, 413.

It was held in *People* v. *Harper*, 91 Ill. 357, that the legislature had full power to pass a law committing the

inspection of grain to a board created for that purpose; that the expenses occasioned by such inspection may be required to be borne by those presumably benefited by it; that the fixing of fees for such services and prescribing the manner of their collection and upon whom they shall be imposed do not fall within the constitutional limitations concerning the imposition of a local burden by way of taxation. In that case the board of warehouse commissioners fixed the fees for the inspection of grain. The court held (p. 369): "There is no provision of the constitution which, either expressly or by necessary implication, inhibits the General Assembly from committing the inspection of grain to a board created for that purpose, and we are not authorized to say that the board of commissioners of railroads and warehouses is not quite as legitimate as any other board that could have been selected or created for that purpose. It evidently was not designed that the inspection should be made a source of revenue, either to the State or to municipalities, for it is not enjoined as a means of raising revenue, but solely 'for the protection of producers, shippers and receivers of grain and produce;' and there is natural justice in requiring that the expenses occasioned by the inspection should be borne by those presumably benefited by it. Certainly no clause of the constitution is violated by this requirement."

The mining of coal is recognized as a dangerous and hazardous business, and is a productive industry of the greatest importance. For many years in this State many thousands of men have been engaged in that character of work, and a proper safeguard of their lives and health is a matter of so great interest and necessity that no subject can be mentioned where there is a more positive necessity for the exercise of the police power than in seeking to subserve their safety. With a recognition of the fact that under the police power the legislature has the right to provide for the inspection of mines, it may

also provide for the payment of fees for such inspection, and may place the burden of the payment of such fees on the business that requires the employment of men in such dangerous and hazardous work, to an equal extent as it may place the burden on commerce in the shipment of grain, and appeals much more strongly for a proper enforcement of this character of law by proper inspection than the mere protection of trade. If an inspection is to be had, it is attended with expense. The expense thus incurred is imposed because of the peculiar dangers of the surrounding situation, and subserves not only the interest of the miners, but alike protects the mine owner, and hence the burden of the payment of the fee can be properly imposed upon the mine owner without violating any provision of the constitution.

Appellant contends that legislation, under the provisions of section 29 of article 4, can only be had with reference to ventilation and escapement shafts. Such contention cannot be sustained, because that section requires legislation for a particular purpose having in view the safety of miners, and submits to the legislature the policy to be pursued for the accomplishment of that end, and which cannot lightly be interfered with by a court. Appellant, from the position taken, seems to disregard the fact that the legislature may legislate, under the police power which it possesses, outside of the mere mandates of that provision of the constitution. The contention is entirely too narrow.

Appellant further contends that, inasmuch as the specific time or occasion when inspections are to be made is not limited, power exists in the inspectors to inspect daily and unnecessarily, and impose a burden, by the imposition of fees, which would, in effect, destroy the business of the mine owner. Whilst the act requires that there must be at least four inspections a year, and imposes the duty on the inspectors to make the inspection as often as may be deemed necessary and proper, yet

they are made subject to removal for neglect of duty. or malfeasance in the discharge of duty, and it is expressly provided that they "shall not be guilty of any act tending to the injury of miners or operators of mines during their term of office." An attempt to impose unreasonable inspections, such as it is insisted by counsel for appellant they may do, would be an act tending to the injury of the operators of mines, for which the very provisions of the act provide a means of prevention, and the law is not so powerless that it could not prevent extortions of this character. From the stipulation of facts under which this case was tried, it appears that appellant's mines were inspected thirty-three times between November 1, 1895, and March 30, 1898,—a period of two years and five months,—during which time the appellant owned and operated six mines. Hence there was only an average of one inspection every five and one-third months. It is true that mine No. 2, as appears from the facts, was inspected March 5, 1897, and was again inspected March 10, 1897. The facts and circumstances which induced the second inspection so soon after the other are not in any manner explained; but it may well be that because of the explosion of gas, or the obstruction to ventilation in the mine, or from some other cause resulting in inability to reach the escapement shaft, loss of life resulted, which necessarily induced prompt examination thereafter.

We hold that it was within the power of the legislature to provide for the inspection of mines by inspectors so appointed, and to provide for fees to be paid by the mine owner to be used towards the payment of the expenses of such inspection. Such fee is in no sense a tax, but a mere compensation for services rendered, and the act is therefore not unconstitutional.

It was not error to refuse to hold the propositions asked by the appellant, and the judgment of the circuit court of Sangamon county is affirmed.

*Judgment affirmed.*