THE CONSOLIDATED COAL COMPANY

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed June 21, 1900.*

CONSTITUTIONAL LAW—*act relating to mine inspections is not unconstitutional.* The provisions of section 11 of the act on mines, as amended in 1895 and 1897, (Laws of 1895, p. 252; Laws of 1897, p. 269;) requiring mine inspections and making the mine owner liable for inspection fees, are not unconstitutional in that they do not lay down rules for carrying the law into impartial execution, or fix a reasonable number of annual inspections at fees based upon some definite circumstance or condition. (*Chicago, Wilmington and Vermilion Coal Co.* v. *People,* 181 Ill. 270, followed.)

WRIT OF ERROR to the Circuit Court of St. Clair county; the Hon. WILLIAM HARTZELL, Judge, presiding.

CHARLES W. THOMAS, for plaintiff in error.

E. C. AKIN, Attorney General, (C. A. HILL, and B. D. MONROE, of counsel,) for the People.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

Judgment was rendered against the plaintiff in error for $1818, on account of inspection fees for inspections made of its various mines by a State mine inspector between November 2, 1895, and June 26, 1899. There were one hundred and eleven inspections at $6 each, sixty-nine inspections at $8 each, and sixty inspections at $10 each. This writ of error is prosecuted to reverse that judgment.

The case was tried on an agreed statement of facts, from which it appears that the plaintiff in error is a corporation owning thirty-one mines in the fourth, fifth and sixth mining districts of the State of Illinois, for the inspection of which, during the time aforesaid, the inspection fees for which judgment was entered were charged. It was stipulated that the charges against said defendant upon which said suit is based and for the recovery of

which said suit is brought, were and are made under and pursuant to an act of the General Assembly entitled "An act providing for the health and safety of persons employed in coal mines," approved May 28, 1879, in force July 1, 1879, and the several amendments thereto since made and enacted, and that the question to be raised and disposed of in this suit is the validity or constitutionality of so much of said above entitled act, and the amendments thereto, as relate to the State mine inspectors and imposing upon the mine operator and owner the duty of paying such fees, and also whether there is any remedy at law to recover such fees; and that if the said law is in these respects sustained under either or both counts of the declaration herein, the plaintiff shall have judgment for such sum or amount as appears due, otherwise the defendant to have judgment for its costs.

Counsel for plaintiff in error in his brief says that the case of *Chicago, Wilmington and Vermilion Coal Co.* v. *People*, 181 Ill. 270, settles, so far as this court is concerned, all the questions that arise upon this record, except one, viz., whether or not the statute under which this suit was brought is in contravention of the fourteenth amendment to the constitution of the United States, in that it denies plaintiff in error the equal protection of the laws or takes its property without due process of law.

The act above referred to, as amended in 1897, (Hurd's Stat. 1897, p. 1088,) after providing for the creation of inspection districts of the State to the number of seven, and the appointment of inspectors, one for each district, upon the recommendation of the board of examiners, and fixing their qualifications for office, experience, etc., oath, and bond conditioned for the faithful performance of their duties in every particular, as required by the act, to be approved by the Governor, by paragraph 11d of the same provides as follows: "Any person, company or corporation operating any coal mine in this State shall

be required to pay an inspection fee of not less than $6 nor more than $10 for each visit of inspection or investigation of a coal mine by a State mine inspector, such fee to be regulated by the class of the mine, which shall be fixed by the inspector and depend upon the length of time consumed, and the expense necessarily incurred in the inspection of such mine, and such fee shall be paid quarterly by the person, company or corporation operating the mine inspected to the secretary of the bureau of labor statistics and by him covered into the State treasury to be held as a fund for the payment of salaries of State mine inspectors, as herein provided. It shall be the duty of each inspector, as often as he may deem necessary and proper, and at least four times a year, to inspect each and every mine in his inspection district. Each inspection shall be certified to by the pit committee and mine manager of said mine. It shall be the duty of each inspector to keep a detailed record of all inspections and of all fees for such inspections, and he shall file a copy of the same with the secretary of the State bureau of labor statistics quarterly."

The section then proceeds to fix the salary of the inspectors at $1800 per year, and provides that in the event of such fees being inadequate to compensate the inspectors in the amount provided, the deficiency in their salaries shall be paid out of any moneys in the State treasury not otherwise appropriated. The act further requires that the inspector shall be required to post up in a conspicuous place at the top of each mine visited and inspected by him, a plain statement of the condition of said mine, showing what, in his judgment, is necessary for the better protection of the lives and health of persons employed in said mine, the date of the inspection, the number of hours spent in the inspection, the date of the latest previous inspection, and provides for the authentication of the same by the inspector and check weighman.

In *Chicago, Wilmington and Vermilion Coal Co.* v. *People,* *supra,* we held that under the police power the legislature has the right to provide for the inspection of mines, and that it also has the right to place the burden of the expense of such inspections upon the mine owners. Counsel for plaintiff in error contends, however, that the law in question is unconstitutional because it fails to lay down proper rules for its impartial execution; that it should fix the fees to be charged based upon the number of men employed or upon the size of the mine, or "some definite circumstance or condition," and should fix a reasonable number of inspections to be made annually, by which the exercise of an arbitrary discretion might be avoided.   One inherent reason or excuse for impressing an industry with the duty of submitting to an examination into its affairs or the conditions under which its business is conducted, lies in the fact that it is impracticable to lay down *a priori* rules and regulations or a sufficient test of their observance, which shall be fixed unalterably and unvarying, and in consequence thereof public safety demands a visitational control by the sovereign authorities, which shall be commensurate with the necessities and conditions as met, but ever reasonable, and without oppression or divestiture of property rights or greater than the exigencies demand, for the determination of which there is always the power reserved to the courts, and when a tribunal is called upon to pass upon such enactment it is met with every presumption in favor of the constitutionality of the act, and unless the legislative action is clearly subversive of private rights or perversive of legislative authority, after an examination into all the facts, circumstances and conditions that prompted or might have prompted the enactment of the act, its constitutionality must be upheld.

It is unnecessary to again recite at length the reasons given in *Chicago, Wilmington and Vermilion Coal Co.* v. *People,* *supra,* as to the necessity for requiring inspections of coal

mines where men are employed. The act in question requires a certain number of inspections to be made annually, and these may be increased when unforeseen conditions make the same necessary. A limitation of the number of inspections regardless of circumstances, or dependent solely on the number of men employed, or the size or shape of the mine, or its age, or any other one circumstance that occurs to us, would fritter away the benefits to be derived from the act and create a condition that might be productive of danger both to the safety of the mine and the lives of miners employed therein. The dipping of a fissure, by which gas may escape into the mine; the gathering of foul air in certain rooms therein, resulting from unknown causes, or the dangerous condition of the roof, may necessitate frequent inspections in the interest of safety to the mine and miners, which inspections would not be necessary where such conditions do not exist. Such causes and conditions cannot be foreseen. They may result from an extension of the work in the mine, from an explosion therein or in the ordinary blasting of coal, and from other causes resulting in the necessary manner of working the mine. When such conditions exist, inspection is necessary more often than when they are absent, and to attempt to lay down a rule by statute fixing the number of inspections would prevent a proper protection of operative miners, as required by section 29 of article 4 of the constitution, and would destroy the purposes of the act.

We have carefully examined the cases of *Yick Wo* v. *Hopkins*, 118 U. S. 256, *Walch* v. *City of Denver*, 53 Pac. Rep. 458, and *City of Baltimore* v. *Radicke*, 49 Md. 217, relied on by plaintiff in error, and find nothing to modify the views herein expressed.

The judgment of the circuit court of St. Clair county is affirmed.                    *Judgment affirmed.*