### PLONER v. STANDARD OIL CO.

(Circuit Court of Appeals, Seventh Circuit. September 12, 1922. Rehearing Denied October 13, 1922.)

No. 3096.

1. **Municipal corporations** ⊂⊃592(1)—**Oil inspection ordinance held void, as in conflict with statute.**

Under the law of Illinois, where a state statute covered the entire subject of oil inspection, leaving to municipalities only the appointment of inspectors to act therein and the fixing of their compensation, a city ordinance covering the same ground, and containing additional and conflicting provisions, is void, as beyond the powers of the city.

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. **Municipal corporations** ⟨⟩**591—Ordinance giving inspector discretion as to fees held void.**

A city ordinance, providing for appointment of an oil inspector with authority to charge and collect a fee "not to exceed" 6 cents for inspecting each package, cask, or barrel, and to retain such fees, which left the fee to his discretion within the maximum fixed, *held* unreasonable and void, as an unauthorized delegation of power.

3. **Inspection** ⟨⟩**4—Inspector appointed under city ordinance not an officer acting under state statute.**

An oil inspector, appointed under a city ordinance and purporting to act only under its authority, cannot claim to be an officer acting under a state statute providing for oil inspection.

4. **Inspection** ⟨⟩**6—Of oil at request of owner held not to bind it to pay inspection fees.**

That a shipper of oils into a city for sale, in compliance with an ordinance, requested their inspection, where at the time it denied validity of the ordinance as applied to gasoline, and refused to pay for its inspection, which was not for its benefit, but for protection of the public, *held* not to bind it to pay the inspector's fees therefor.

5. **Municipal corporations** ⟨⟩**121—Foreign corporation may challenge void ordinance.**

Where an ordinance is wholly void, as in conflict with a state statute, its validity may be challenged by a foreign corporation.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action at law by John A. Ploner against the Standard Oil Company. Judgment for defendant, and plaintiff brings error. Affirmed.

The action was in debt on an ordinance of the city of Chicago, passed April 18, 1881, which provided that "there is hereby created the office of inspector of oils who shall hold his office for the term of two years"; that he be appointed by mayor with consent of council, give bond to city, shall have knowledge of mineral oils, shall at his own expense provide instruments for testing oils, and may appoint deputies, shall test oils on request of dealer or vendor and brand "each package, cask or barrel," which may not, without such inspection and branding, be offered for sale in the city; that "the inspector may charge not to exceed 6 cents for inspecting or examining each package, cask or barrel, and collect the same from the party employing him"; that it shall be unlawful to keep for sale kerosene or other products of earth oils for illuminating purposes except such thereof "as will stand a fire test of 150° Fahrenheit according to the method and directions of John Tagliabue"; that persons violating the ordinance by refilling containers, or offering for sale oil not inspected and branded as provided, shall suffer the prescribed penalties.

The declaration further alleges that such ordinance became and still is in force, and that on May 1, 1905, plaintiff was duly appointed as such inspector of oils by the mayor of Chicago, with approval of the council; that he gave bond approved by the council, took oath of office, and qualified and acted as such until May 1, 1907, "under the ordinance aforesaid and the laws of the state of Illinois"; that he appointed deputies and "made inspection of oils as provided in said ordinance at all times during his said term of office"; that during said time the defendant applied to plaintiff to inspect gasoline and naptha and agreed to pay plaintiff for the inspection "the price specified in said ordinance, to wit, six cents for examining each package, cask, or barrel," and has not paid same.

From the evidence it appeared that in 1897 there was passed another ordinance on the subject substantially like that of 1881, but providing that the inspector shall collect in cash 6 cents for each package, cask, or barrel inspected, and retain therefrom for his own compensation $300 per month, pay-

ing the balance into the city treasury, and repealing all conflicting ordinanc-
es. The revised City Code of 1905 likewise fixes 6 cents as the inspection rate,
and $300 monthly as the inspector's compensation. It provides that on a
container holding more than 52 gallons the fee shall be 6 cents for each 52
gallons thereof. It repeals prior ordinances. It appears that, on his appoint-
ment, plaintiff entered into a separate contract with the city that the
amount fixed in the ordinance ($300 per month) should be the maximum of
compensation he would retain for his personal compensation as such inspec-
tor, and that whatever fees he collected in excess of such amount he would
turn over to the city.

Defendant was willing to pay and did pay the fee on illuminating oils,
but not on gasoline and naptha, and, as monthly bills for inspection were
rendered by plaintiff, defendant would pay that part which represented the
illuminating oils, but refused to pay the other, saying, in writing: "This we
refuse to pay, and, as we understand, you are willing to accept this payment,
for inspection of oil only, until the question of the legality of the ordinance
for the inspection of gasoline is settled. If this is your understanding, and
is satisfactory to you, please accept this check and sign voucher; otherwise,
return both check and voucher to us." This was the routine month by month;
the checks being accepted by plaintiff, and the balance remaining unpaid.
Out of the payments made, plaintiff retained his compensation of $300 month-
ly, and after the payment further of the expenses of the office a large bal-
ance was turned into the city treasury. For the unpaid inspection bills on
the gasoline and naptha the suit was brought, and on the trial the jury, at
the court's direction, found for defendant, and judgment was entered ac-
cordingly, the correctness whereof is challenged by the writ herein.

Chas. H. Mitchell and S. P. Douthart, both of Chicago, Ill., for plain-
tiff in error.

Robert J. Folonie, of Chicago, Ill., for defendant in error.

Before ALSCHULER and EVANS, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above).
[1] While it appears that the ordinance of 1881 was, in terms, repeal-
ed by the subsequently enacted ordinances, it is the theory of plaintiff
that the below referred to action of the Supreme Court of Illinois, in
holding invalid the subsequent ordinances, left that of 1881 in full
force, as though its repeal had not been undertaken. Granting this
contention, we are first met with the question of the validity of the or-
dinance of 1881. Save only as to the different provisions of the subse-
quent ordinances, requiring the surplus of fees collected over $300 per
month to be turned into the city treasury, this ordinance is subject prac-
tically to the same objections pointed out by the Illinois Supreme Court
in City of Chicago v. Burke, 226 Ill. 191, 80 N. E. 720. By the stat-
ute of 1874 the Legislature assumed control over the subject of oil in-
spection, and its enactment thereon covers the subject, giving to the
municipality only the function of appointing the inspector, who is to
act in the city, and the fixing of his compensation. The ordinance of
1881, like those that follow it, purports to be a complete codification of
the subject, just as though the Legislature had not acted thereon. In
the main, the conflicting and additional provisions of this ordinance are
like those of the subsequent ordinances, held to be invalid as covering
a subject with which the city council was not empowered to deal. That
plaintiff purported to act only under the authority of the ordinance is
quite as plain here as in the Burke Case, where the court held that, pur-
porting so to act, and basing his authority upon these subsequently en-

acted ordinances, Burke was neither an officer de jure nor de facto; the ordinance under which he assumed to act being held void in toto. A similar conclusion was reached by the same court, in an action by this plaintiff in error under such subsequent ordinance to compel the city of Chicago to refund to him the fees he had collected and paid into the treasury over and above the $300 per month. Ploner et al. v. City of Chicago, 248 Ill. 392, 94 N. E. 46. In the interest of brevity, we will not enter into an analysis of these cases, but they are referred to for better understanding of what was there decided.

[2] But there is in the ordinance of 1881 an infirmity not found in the subsequent ordinances, in that it provides:

"The inspector may charge *not to exceed* 6 cents for inspecting or examining each *package, cask or barrel* and collect the same of the party employing him."

This leaves it entirely within the discretion of the inspector whether, up to 6 cents, he will charge much or little or anything at all. It is not even undertaken, as in the ordinance of 1905, to fix a unit—such as a barrel—and in case of a large container or package, such as a tank car, not to be drawn off into smaller packages, the fee would not be different from that on a barrel. The ordinance fixes no guide or rule whatever for the exercise of the inspector's discretion, leaving the entire matter of charge, up to the maximum, to his own will. This is an unwarranted delegation of power, and, generally speaking, an ordinance conferring it is unreasonable and void. Yick Wo v. Hopkins, 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220; Cicero Lumber Co. v. Town of Cicero, 176 Ill. 9, 51 N. E. 758, 42 L. R. A. 696, 68 Am. St. Rep. 155; City of Chicago v. John Trotter, 136 Ill. 430, 26 N. E. 359; City of East St. Louis v. Wehrung, 50 Ill. 28; Mayor, etc., v. Radecke, 49 Md. 217, 33 Am. Rep. 239.

In one Illinois case, where the statute provided for a maximum fee of $10 and a minimum fee of $6 for inspecting mines, and further provided that the fee should depend on the length of time consumed and the expense necessarily incurred in inspection, the court held that, in view of the great difference in the character of mines, it would not be practicable to fix a fee which would be the same in all cases, nor to prescribe exact rules for fixing the fee within the prescribed limits, and this statute was upheld. Consolidated Coal Co. v. People, 186 Ill. 134, 57 N. E. 880, 56 L. R. A. 266. On error to the United States Supreme Court, in the affirming opinion it was pointed out that the inspection fee, within the stated limits, would depend upon the time and expense involved in the inspection of the mines, and that the compensation of the inspector was in no way dependent upon the fees collected, but if the fees were not sufficient to pay the fixed salary, the balance should be paid out of the treasury. The court said:

"If his discretion were unlimited in this direction, and the fees were retained by himself, there would be much force in the suggestion." St. Louis Consolidated Coal Co. v. Illinois, 185 U. S. 203, 22 Sup. Ct. 616, 46 L. Ed. 872.

As stated, in the case at bar, the amount, within the maximum, is determinable wholly by the will of the inspector, who, under this or-

dinance, takes for his compensation the entire amount of all fees collected. We are satisfied that for this reason alone the ordinance of 1881 was void.

[3] To plaintiff's insistence that he was an officer acting under the statute of 1874 (as subsequently amended in respects not material here) we repeat that this contention is effectually disposed of by the Burke and Ploner Cases, supra.

[4] It is further contended that, regardless of ordinances or statute, the inspection was done at the request of defendant, and that, being a service performed at its request, defendant should pay. While it may be that defendant would notify plaintiff, according to the terms of the ordinance, that it had gasoline, and even requested him to inspect it, it nevertheless consistently denied the validity of the ordinance as to gasoline, and refused to pay. The inspector was evidently willing to take his chance, since he would in no event have been required to inspect, where the owner of the oil said in advance he would not pay. The inspecting of the oil was not a service to the defendant, in the sense that it was a physical improvement to its property or added to its value. The object of the inspection was clearly not to the special interest and benefit of the defendant, 'but presumably of the public. No doubt, when the defendant brought oils to market and represented them to be of suitable quality for intended use, defendant was sufficiently satisfied of its own good faith and the propriety of its practices, that for its benefit and protection no inspection was needed. The inspection was in effect a checking up of the dealer's representation, actual or implied, of quality and fitness for use of oils offered in the Chicago market. Surely here, where admittedly the plaintiff, out of the fees collected, has already received all that he contracted to receive by way of his personal compensation for all the service that he rendered, there is not that impelling reason for sustaining his claim as is to be found in some cases cited, where under void ordinances work was done and materials furnished with consent of the property owner, which physically and substantially improved and enhanced the value of his property.

It was further contended that the entire invalidity of the ordinance was not asserted in the reasons given by defendant for refusing to pay the bills rendered for gasoline inspection, but that these were challenged only because of the claim that gasoline could not lawfully be included, while recognizing the right to collect on kerosene, and that, if gasoline and kerosene are held to be in the same relation, the payment of the bills for inspecting kerosene is a recognition of the validity of the ordinance, and the defendant cannot now "change his hold." This is rather far-fetched. We do not think that payment upon the kerosene inspected has any bearing on the question. The persistent refusal to pay for inspecting the gasoline was predicated upon the alleged invalidity of the ordinance as to gasoline, and payment was to await determination of that question. If the ordinance was subsequently found entirely void, it was void as to gasoline, as well as kerosene. Surely, it has not yet been held valid, and the stated condition under which defendant agreed to pay for inspecting the gasoline has

not yet come to pass. Indeed, it does not appear that plaintiff was then asserting liability under the ordinance of 1881, or the claim that he was then an officer under the statute. These are contentions which did not arise until the litigation began, and we find nothing in the conduct of the defendant to prevent insistence now on the invalidity of the ordinance of 1881.

[5] Respecting plaintiff's contention that the defendant, being a nonresident corporation, may not raise the question of the invalidity of the ordinance, the case does not even fall within the line of authorities referred to in the plaintiff's briefs and argument, to the effect that such a corporation may not object to the invalidity of an ordinance properly passed under the authority of a statute, notwithstanding such statute is subsequently held to be invalid. As has been seen, the ordinances here considered in and of themselves transgress the statute, to which we must look for authority to enact any ordinance on the subject; and having been enacted without statutory authority, they are void for all purposes, and are not more binding upon nonresident corporations than on others. Unless it is the law that a foreign corporation, authorized to do business in another state, must submit to any imposition upon it by a purported municipal ordinance, passed without authority and utterly void as to all individuals and domestic corporations, plaintiff's contention in this regard is without foundation. The mere statement of such a proposition negatives it.

The judgment is affirmed.