## BLUMENSTOCK BROTHERS ADVERTISING AGENCY *v.* CURTIS PUBLISHING COMPANY.

### ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 197. Submitted January 26, 1920.—Decided April 19, 1920.

Jurisdiction based on diverse citizenship cannot be maintained in the District Court, over defendant's objection, in a district where neither party resides. P. 440.

To confer jurisdiction on the District Court over an action for triple damages under § 7 of the Sherman Anti-Trust Act, a claim under the statute, plainly real and substantial, must be set up by the averments. *Id.*

A business conducted by an advertising agency of placing, by contracts with publishers, advertisements for manufacturers and merchants, in magazines which are published and distributed throughout the United States, is not interstate commerce, although the circulation and distribution of the publications themselves be such; and a declaration claiming triple damages for injury alleged to have resulted from refusal of a publisher to accept such advertisements from such an agency pursuant to an attempt of the publisher to monopolize the business of publishing such advertising matter, fails to state a claim or cause of action of the substantial character requisite to confer jurisdiction on the District Court under the Sherman Anti-Trust Act. P. 441. *International Textbook Co.* v. *Pigg*, 217 U. S. 91, distinguished.

Affirmed.

THE case is stated in the opinion.

*Mr. Colin C. H. Fyffe* for plaintiff in error. *Mr. Paul N. Dale* and *Mr. David R. Clarke* were on the brief.

*Mr. Amos C. Miller* for defendant in error. *Mr. Sidney S. Gorham, Mr. Henry W. Wales* and *Mr. Gilbert Noxon* were on the brief.

MR. JUSTICE DAY delivered the opinion of the court.

This suit was brought by the Blumenstock Brothers Advertising Agency against the Curtis Publishing Company in the District Court of the United States for the Northern District of Illinois to recover treble damages under § 7 of the Sherman Anti-Trust Act.  26 Stat. 209. The case here concerns the question of the jurisdiction of the District Court.  Judicial Code, § 238.  The plaintiff is a corporation of the State of Missouri, the defendant a corporation of the State of Pennsylvania.  The defendant appeared specially in the District Court and moved to dismiss the complaint for want of jurisdiction, the grounds stated being:

1.  "That in each of the counts of plaintiff's original declaration, and in the additional count thereof, it appears that the plaintiff is a citizen and resident of the State of Missouri, and that this defendant is a citizen and resident of the State of Pennsylvania."

2.  "That in none of said counts is a cause of action stated by plaintiff within the provisions of the Act of Congress approved July 2nd, 1890, entitled, 'An Act to protect trade and commerce against unlawful restraints and monopolies.'"

The court entered judgment dismissing the suit for want of jurisdiction over the defendant or the action.

The record contains a certificate stating that the court found that it had no jurisdiction of the defendant and no jurisdiction to entertain the action.  The certificate further states, that the question involved is whether the transaction set forth in the several counts of the declaration involves a question of interstate commerce, and whether the averments in said several counts of the declaration state a cause of action within the provisions of the Act of July 2, 1890.

The declaration is voluminous, containing five counts

and an additional count. So far as it is necessary for our purpose the cause of action of the plaintiff may be said to rest upon the allegations: That the plaintiff is engaged at Chicago in conducting an advertising agency. That when customers or principals desire to place advertisements in the magazines and periodicals of the trade they make plaintiff their agent, and plaintiff contracts with the defendant and other publishers and distributors of magazines; that plaintiff had many customers for whom it placed advertisements in the periodicals published and distributed by the defendant and in other periodicals of other publishers, all of which were distributed throughout the United States and the several States thereof; that the defendant was the owner and publisher of three periodicals sold and distributed throughout the United States known as "The Saturday Evening Post," "The Ladies Home Journal," and "The Country Gentleman;" that the business of the defendant in publishing, selling and distributing said periodicals was interstate commerce. The character of each of the several publications is described, and a large circulation is attributed to each of them; and it is stated that in publishing and distributing said periodicals defendant held itself out as desirous of taking, receiving, printing, publishing, and distributing throughout the United States its publications and advertisements to persons, firms and corporations concerning their business and occupation; that in the course of the business the defendant dealt with the plaintiff and other advertising agencies; that the defendant in the regular course of its business dealt with not only advertisers, but with advertising agencies such as the plaintiff, and it is alleged that such dealings were transactions of interstate commerce, and that the business of editing, publishing and distributing throughout the United States the advertising matter contained in said publications, pursuant to contracts made with its customers and advertising

agencies, was interstate commerce; that such commerce is dependent for its operation and growth upon advertising facilities offered by magazines and periodicals such as those of the defendant, and that such publications constitute the chief method of presenting to the buying. public the articles held out for sale; that the advertising facilities were necessary to dealers, merchants, and manufacturers in order to bring their products to the notice and attention of purchasers; that the defendant's periodicals, particularly "The Saturday Evening Post," have an important position among such publications, and are largely read throughout the United States; that "The Saturday Evening Post" is the most necessary of such advertising mediums to the customers of the plaintiff; that the defendant's periodicals, together with certain other magazines, periodicals and publications owned by persons other than the defendant, had, to a certain extent, exclusive control of a certain field of advertising; that the magazines and other publications which control and do all the advertising business of the field in question are few in number; that for the advertising of goods and merchandise offered for sale in commerce there were no adequate facilities except those offered by the defendant and other publishers of similar magazines; that the defendant was desirous of using its preponderant position in this special field of advertising as a means of acquiring for itself and its publications, especially for "The Saturday Evening Post," a monopoly of the publication and distribution of advertising matter in this restricted field of advertising throughout the United States in violation of the Anti-Trust Act; that the defendant refused without any reasonable cause to accept proper and ordinary advertising matter or copy offered in the usual way to the defendant by the plaintiff and other advertising agencies unless the plaintiff, and other advertising agencies, would agree to allow the defendant to increase its preponder-

ance in said advertising field by permitting it to control and limit and reduce, at the will of the defendant, the amount of advertising given by the plaintiff and other advertising agencies to the owners and publishers of other magazines, journals, periodicals and other publications aforesaid, which were competing with the defendant in the field of advertising mentioned and described; that by reason of the illegal and wrongful acts, done by the defendant in pursuance of its attempt and scheme to create a monopoly for its own benefit in, and to monopolize the advertising business, plaintiff lost the business of its customers for whom it had been acting as agent in placing of advertisements with defendant's and other publications, and was prevented from making further contracts for the placing of advertising matter in publications of the defendant, and in consequence thereof, in any other publication of a like or similar character, to the damage of the plaintiff in the sum of $25,000.

The declaration contains an alleged cause of action at common law, but as neither the plaintiff nor the defendant reside in the district in which the suit was brought, it is conceded that such cause of action could not be maintained in that court against the defendant's objection. Section 51, Judicial Code.

The Sherman Anti-Trust Act (§ 7) created a cause of action in favor of any person to recover by suit in any District Court of the United States, in the district in which the defendant resides or is found, three-fold damages for injury to his business or property by reason of anything forbidden and declared unlawful in the act. In order to maintain a suit under this act the complaint must state a substantial case arising thereunder. The action is wholly statutory, and can only be brought in a District Court of the United States, and it is essential to the jurisdiction of the court in such cases that a substantial cause of action within the statute be set up.

In some cases it is difficult to determine whether a ruling dismissing the complaint involves the merits of the cause of action attempted to be pleaded or only a question of the jurisdiction of the court. In any case alleged to come within the federal jurisdiction it is not enough to allege that questions of a federal character arise in the case, it must plainly appear that the averments attempting to bring the case within federal jurisdiction are real and substantial. *Newburyport Water Co.* v. *Newburyport,* 193 U. S. 561, 576.

In cases where, as here, the controversy concerns a subject-matter limited by federal law, for which recovery can be had only in the federal courts, the jurisdiction attaches only when the suit presents a substantial claim under an act of Congress. This rule has been applied in bankruptcy cases (*Grant Shoe Co.* v. *Laird Co.,* 212 U. S. 445;) in copyright cases (*Globe Newspaper Co.* v. *Walker,* 210 U. S. 356;) in patent cases (*Healy* v. *Sea Gull Specialty Co.,* 237 U. S. 479;) in admiralty cases (*The Jefferson,* 215 U. S. 130).

We come then to inquire whether the cause of action stated was a substantial one within § 7 of the Sherman Anti-Trust Act. It is not contended that any combination, conspiracy, or contract in restraint of trade is alleged such as would bring the case within the first section of the act. The second section is relied upon which in terms punishes persons who monopolize or attempt to monopolize, or combine with others to monopolize any part of trade or commerce among the several States or with foreign nations.

The Anti-Trust Act, it is hardly necessary to say, derives its authority from the power of Congress to regulate commerce among the States. It declares unlawful combinations, conspiracies, and contracts and attempts to monopolize which concern such trade or commerce. It follows that if the dealings with the defendant, which

form the subject-matter of complaint, were not transactions of interstate commerce, the declaration states no case within the terms of the act.

Commerce, as defined in the often quoted definition of Chief Justice Marshall, in *Gibbons* v. *Ogden,* 9 Wheat. 1, 189, is not traffic alone, it is intercourse, "It describes the commercial intercourse between nations, and parts of nations, in all its branches, and is regulated by prescribing rules for carrying on that intercourse."

In the present case, treating the allegations of the complaint as true, the subject-matter dealt with was the making of contracts for the insertion of advertising matter in certain periodicals belonging to the defendant.     It may be conceded that the circulation and distribution of such publications throughout the country would amount to interstate commerce, but the circulation of these periodicals did not depend upon or have any direct relation to the advertising contracts which the plaintiff offered and the defendant refused to receive except upon the terms stated in the declaration.     The advertising contracts did not involve any movement of goods or merchandise in interstate commerce, or any transmission of intelligence in such commerce.

This case is wholly unlike *International Textbook Co.* v. *Pigg,* 217 U. S. 91, wherein there was a continuous interstate traffic in textbooks and apparatus for a course of study pursued by means of correspondence, and the movements in interstate commerce were held to bring the subject-matter within the domain of federal control, and to exempt it from the burden imposed by state legislation.     This case is more nearly analogous to such cases as *Ficklen* v. *Shelby County Taxing District,* 145 U. S. 1, wherein this court held that a broker engaged in negotiating sales between residents of Tennessee and non-resident merchants of goods situated in another State, was not engaged in interstate commerce; and within that line of

cases in which we have held that policies of insurance are not articles of commerce, and that the making of such contracts is a mere incident of commercial intercourse. *Paul* v. *Virginia*, 8 Wall. 168; *Hooper* v. *California*, 155 U. S. 648; *New York Life Ins. Co.* v. *Deer Lodge County*, 231 U. S. 495. We held in *Hopkins* v. *United States*, 171 U. S. 579, that the buying and selling of livestock in the stockyards of a city by members of the stock exchange was not interstate commerce, although most of the livestock was sent from other States. In *Williams* v. *Fears*, 179 U. S. 270, we held that labor agents engaged within the State of Georgia in hiring persons to be employed outside the State were not engaged in interstate commerce. In *Ware & Leland* v. *Mobile County* 209 U. S. 405, we held that brokers taking orders and transmitting them to other States for the purchase and sale of grain or cotton upon speculation were not engaged in interstate commerce; that such contracts for sale or purchase did not necessarily result in any movement of commodities in interstate traffic, and the contracts were not, therefore, the subjects of interstate commerce. In the recent case of *United States Fidelity & Guaranty Co.* v. *Kentucky*, 231 U. S. 394, we held that a tax upon a corporation engaged in the business of inquiring into and reporting upon the credit and standing of persons in the State, was not unconstitutional as a burden upon interstate commerce as applied to a non-resident engaged in selecting and distributing a list of guaranteed attorneys in the United States, and having a representative in the State. The contention in that case, which this court denied, was that the service rendered through the representatives in Kentucky, and other representatives of the same kind acting as agents of merchants engaged in interstate commerce, to furnish them with information through the mails, or by telegraph, or telephone, as a result of which merchandise might be transported in interstate commerce,

or withheld from such transportation, according to the character of the information reported, was so connected with interstate commerce as to preclude the State of Kentucky from imposing a privilege tax upon such business.

Applying the principles of these cases, it is abundantly established that there is no ground for claiming that the transactions which are the basis of the present suit, concerning advertising in journals to be subsequently distributed in interstate commerce, are contracts which directly affect such commerce. Their incidental relation thereto cannot lay the groundwork for such contentions as are undertaken to be here maintained under § 7 of the Sherman Anti-Trust Act. The court was right in dismissing the suit.

*Affirmed.*