123 So.2d 214

**CITY OF BIRMINGHAM**

v.

**SALES PROMOTIONS, INC.**

6 Div. 746.

Court of Appeals of Alabama.

June 30, 1960.

Rehearing Denied Sept. 6, 1960.

Shannon & Conerly, Edward O. Conerly and Sam R. Shannon, Jr., Birmingham, for appellant.

Wm. H. Ellis, Birmingham, for appellee.

HARWOOD, Presiding Judge.

The issue on this appeal is whether the appellee is liable for a license tax imposed by appellant's ordinance Number 1414–F, Section One, Subsection 241, which is:

"241—Trading Stamps, Coupons, Etc.—Each person, firm or corporation engaged in the business of selling, issuing, or otherwise distributing any trading stamps, coupons, certificates or other similar devices redeemable or purporting to be redeemable in partial or full payment of goods, wares, merchandise, services or other things of value shall pay an annual license equal to three per centum of the gross receipts of such business for the next preceding year with a minimum license in any case of $600.00."

Appellee paid under protest the $600 imposed by the ordinance as a minimum license fee, filed a timely demand upon appellant for a refund, and upon the refusal of the appellant to refund, filed suit to recover the amount paid. Appellee alleged that the license tax was illegal and void as being arbitrary, excessive, discriminatory, and a substantial burden on interstate commerce.

A jury trial was waived and the trial court entered judgment for the plaintiff below. From this judgment defendant below perfected this appeal.

Hereinafter appellant will be referred to as the City and appellee as the Stamp Company.

There was no material conflict in the evidence. The evidence showed that the Stamp Company had its offices in Macon, Georgia. All of the Stamp Company's business was conducted in or out of the Macon office with no office, warehouse, redemption center, or establishment of any kind in Alabama. Solicitors or "service men" of the Stamp Company operated out of Macon, Georgia. These solicitors came from Macon, Georgia into Birmingham, Alabama, took orders from merchants for stamps subject to approval by the Macon office, returned the orders to Macon, where, upon approval, the solicitor would pick up in Macon the appropriate number of stamps and deliver them to the merchant on his next round. New and renewal orders for stamps were handled in the same manner.

Redemption of the stamps for the various items of merchandise was done similarly, i. e., the solicitor picked up the filled stamp books which had the merchandise selected

shown therein, took the filled books to Macon, picked up the merchandise and brought it to the local merchant on his next trip.

The "service men" or solicitors spent approximately one and one-half days each week in Birmingham soliciting new orders and servicing old accounts. No stamps were delivered at the time of the order, but were delivered only after approval by the Macon office.

It should be noted at this point that the ordinance in question imposes a license tax based on a per centum of gross receipts with a minimum fixed sum of $600.

Article I, Section 8 of the Constitution of the United States, commonly called the "commerce clause" gives to Congress the power to regulate commerce among the several states.

The sole question involved in this appeal is whether or not the exaction of the minimum fixed sum license tax extracted from this appellant, who clearly was engaged in interstate commerce, constituted a burden upon interstate commerce and was therefore prohibited by the commerce clause of the Federal Constitution.

The welter of decisions pertaining to the question now before us, both in the Federal courts and the State courts, are, by their numbers and delicate distinctions, more productive of confusion than clarity. There is yet much underbrush to be cleared away. See North Western States Portland Cement Co. v. State of Minn., 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421.

It does seem clear, however, that insofar as fixed sum license taxes upon solicitors in interstate commercial transactions are concerned, the original pronouncement in Robbins v. Shelby County Taxing District, 120 U.S. 489, 7 S.Ct. 592, 30 L.Ed. 694, refusing to allow such taxes, remains intact. See Nippert v. City of Richmond, 327 U.S. 416, 66 S.Ct. 586, 90 L.Ed. 760; West Point Wholesale Grocery Company v. City of Opelika, Alabama, 354 U.S. 390, 77 S.Ct.

1096, 1 L.Ed.2d 1420. To like effect are our cases of Crum v. Prattville, 155 Ala. 154, 46 So. 750; Ineichen v. City of Anniston, 10 Ala.App. 605, 65 So. 710; McCarter v. City of Florence, 213 Ala. 367, 104 So. 806; Leibold v. Brown, 260 Ala. 354, 71 So.2d 7.

The foregoing cases are decisive of the present appeal.

Fixed sum license taxes are not rendered valid merely because they are nondiscriminatory, Leibold v. Brown, supra, and cases therein cited, but are deemed a burden upon interstate commerce for the reason that they must be paid as condition precedent to engaging in such interstate commerce, and are subject to being duplicated by every community worked by the solicitors, and they apply to a single transaction with the same force as they do to transactions carried on continuously throughout the year. Armstrong v. City of Tampa, Fla.Sup., 118 So.2d 195; Nippert v. Richmond, supra.

The tax sought to be imposed by the ordinance in question, of course, goes further than imposing a mere fixed sum license tax, in that it provides for an annual license tax "equal to 3 per centum of the gross receipts of such business for the next preceding year with a minimum license in any case of $600.00."

We pretermit consideration as to whether or not the provisions seeking to levy an annual tax of 3 per centum of the gross receipts of a business for the next preceding year is a valid exercise of the taxing power of the City of Birmingham, in that in the record before us the evidence relates solely to the imposition of the minimum fixed sum license tax of $600, and there is no evidence pertaining to the volume of business done by the appellee. See Nippert v. City of Richmond, supra.

Affirmed.

## On Rehearing

Appellant in application for rehearing asks that we reconsider appellant's con-

74

tention that the business of the Stamp Company involves only the making of personal contracts which are not articles of commerce.

Appellant's chief reliance is upon a line of cases involving "personal contracts." In commenting on these cases the United States Supreme Court in Lorain Journal Co. v. United States, 342 U.S. 143, 151, 72 S.Ct. 181, 185, 96 L.Ed. 162, said:

> "The decision in Blumenstock Bros. Advertising Agency v. Curtis Pub. Co., 252 U.S. 436, 40 S.Ct. 385, 64 L.Ed. 649, related to the making of contracts for advertising rather than to the preparation and dissemination of advertising. Moreover, the view there stated, that the making of contracts by parties outside of a state for the insertion of advertising material in periodicals of nationwide circulation did not amount to interstate commerce, rested expressly on a line of cases holding 'that policies of insurance are not articles of commerce, and that the making of such contracts is a mere incident of commercial intercourse.' Id., 252 U.S. at [page] 443, 40 S.Ct. at page 387. See Paul v. State of Virginia, 8 Wall. 168, 19 L.Ed. 357, and New York Life Ins. Co. v. Deer Lodge County, 231 U.S. 495, 34 S.Ct. 167, 58 L.Ed. 332. *That line of cases no longer stands in the way.* United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440. See also, North American Co. v. Securities & Exchange Co., 327 U.S. 686, 66 S.Ct. 785, 90 L.Ed. 945; Indiana Farmer's Guide Pub. Co. v. Prairie Farmer Pub. Co., 293 U.S. 268, 55 S.Ct. 182, 79 L. Ed. 356." (Emphasis added.)

Appellant has cited no case involving the question of whether the trading stamp business was interstate commerce when carried on from one state to another. Sperry & Hutchinson Co. v. Hill, 76 W.Va. 680, 86 S.E. 748, is the only case involving this question which has come to the attention of this court. In that case holding that the trading stamp business was interstate commerce the Supreme Court of West Virginia summarized its decision saying:

> "A company carrying on the business of selling to merchants in this state, upon mail orders addressed to it at its place of business in another state, merchants' trading stamps, and redeeming same with premiums shipped from such other state as ordered, is engaged in interstate commerce, and cannot be required to pay a state license tax for the privilege of conducting such business."

Appellant would separate the redemption phase of appellee's business from the making of the contract to furnish the stamps. An examination of the ordinance here in question shows that the stamps must be redeemable or purport to be redeemable before the selling, issuing, or distribution becomes subject to the license tax.

The following observation from United States v. United Shoe Machinery Co., D. C., 234 F. 127, 145, is decisive of appellant's contention.

> "It is sufficient to say that as new methods of transacting business are devised, if they are found to be in effect methods of carrying on commerce in any business, and the means for commercial transactions between the owner of an article on the one hand, and the person who wants to deal in it or use it in carrying on his business on the other hand, whether it be manufacturing, selling, trading, leasing, transportation, communication, or information, and it is sent or transported from one state to another, it is interstate commerce."

The business of appellee clearly involves commercial intercourse among the several states. There was a continuous flow of articles (both the stamps and the redemption merchandise) from one state to another.

` Appellant asks that the notices contained inside the front and back cover of the stamp saver book be included in our opinion. Although the record shows no apparent connection between these notices and the contracts between the merchants and the Stamp Company, we are glad to comply with counsel's request. The notice on the inside of the front cover is as follows:

"Notice

"To the Public and to the Persons Collecting Family Discount Stamps

"This book and the Family Discount Stamps which are issued by the undersigned, are so issued, and received by you, pursuant to certain restrictions and limitations concerning their use contained in the written contracts made for your benefit between the undersigned and the merchants authorized to reissue them to their customers. Neither the books nor the stamps are sold to you or the merchant, the title thereto being expressly reserved in the undersigned. They are furnished to you as evidence of payments to our subscribers. The only right which you acquire to said stamps is to paste them in books like this and present them for redemption. You must not dispose of them or make any other use of them without our consent in writing. We will in every case, where application is made to the undersigned, give you permission to turn over your stamps to any other bonafide collector of Family Discount Stamps, but if the stamps or the books are transferred without our consent, we reserve the right to restrain their use by, or take them from other parties. It is to your interest that you fill the book, and personally derive the bene-

fits and advantages of exchanging it for valuable premiums. . .

"The stamps when received by you must be pasted in the book, as that is a method we have adopted for the purpose of preventing their further use as an advertising medium. Our Stamps and Premiums are restricted, except as above, to our subscribers and their customers.

"Family Discount Stamp Co.

"The Collector Hereby Agrees to All Rules and Regulations As Stated Above in This Book."

The notice on the inside of the back cover reads:

"Notice

"In order that our Family Discount Stamp savers will not be restricted to premiums listed in our catalogs, our redemption stores are stocked with hundreds of beautiful premiums in addition to those listed in our catalogs.

"Do not mail filled booklets for redemption. If there are no redemption stores within 25 miles of your residence, take your filled book to an authorized merchant issuing our stamps. Print your name, address and catalog numbers for articles of your selection below. Give 1st, 2nd and 3rd choice so that your premium can be delivered promptly.

"Federal Excise and State Sales Taxes must accompany your order in the amount specified in our catalog.

"Each book must be in proper condition—loose leaves cause errors and will not be accepted. Only full books redeemed."

Application overruled.