The STATE OF WASHINGTON, etc., et al., Plaintiffs-Appellants,

v.

The AMERICAN LEAGUE OF PROFESSIONAL BASEBALL CLUBS et al., Defendants-Appellees.

No. 71–1299.

United States Court of Appeals, Ninth Circuit.

April 7, 1972.

William L. Dwyer (argued), Jerry R. McNaul, of Culp, Dwyer, Guterson & Grader, Seattle, Wash., Slade Gorton, Atty. Gen., Olympia, Wash., A. L. Newbould, Lawrence K. McDonell, Seattle, Wash., for plaintiffs-appellants.

Wilbert C. Anderson (argued), John R. Tomlinson, John L. West, of Jones, Grey, Bayley & Olsen, Seattle, Wash., David E. Wagoner (argued), John L.

Weinberg, Andrew M. Williams, of Perkins, Coie, Stone, Olsen & Williams, Seattle, Wash., James P. Garner, Don H. Pace, of Baker, Hostetler & Patterson, Cleveland, Ohio, for defendants-appellees.

Before DUNIWAY and TRASK, Circuit Judges, and LUCAS, District Judge *

DUNIWAY, Circuit Judge:

Plaintiffs-appellants appeal from the district court's denial of their motion to remand under 28 U.S.C. § 1447(c). Removal was on the ground that federal jurisdiction existed under 28 U.S.C. §§ 1331(a) and 1441(b) because appellants' complaint alleged violations of federal antitrust laws and challenged the validity of an order of a federal district court.

## I. *The Complaint.*

Appellants' complaint is long, elaborate, and not easy to summarize. It contains twelve claims based on four theories, each of which is separately alleged by the State of Washington, by the County of King, and by the City of Seattle. The First, Second and Third Claims are based on the appellees' violation of "antitrust" laws. The first part of these claims, entitled "Monopolization of the Baseball Industry," describes at some length the structure of professional baseball throughout the nation and the relationships among the major leagues, minor leagues, and individual club owners.

Paragraph 23 alleges that as a result of the organization of and co-operation between the American League and its member club owners, they have obtained monopoly power, and in general have artificially fixed the conditions for access to professional baseball by prospective players and club owners, and also that the appellees have restrained commerce in fields other than the exhibition of baseball. Paragraphs 24 through 30 contain specific examples, among which are the sale of baseball franchises, the construction and operation of multi-purpose stadia, the sale of rights to broadcast major league games, and the sale of concession franchises for the various major league stadia.

Paragraph 29 alleges that tying arrangements with concessionaires, by loans and credit on one hand and long term stadium contracts on the other, "restrains commerce . . . in violation of the Sherman Act, the Consumer Protection Act of the State of Washington (RCW Ch. 19.86), and other applicable antitrust statutes." Paragraph 30 alleges that these tying arrangements give the concessionaire-appellees the power to influence the awarding of major league franchises.

Paragraph 31, which is entitled "Offenses Charged," alleges that the appellees have (1) fixed prices and excluded competitors from the baseball industry; (2) boycotted nonprofit organizations that seek to operate professional baseball clubs on a public service basis; (3) restrained trade in industries distinct from the baseball industry; and (4) exploited monopoly power in inducing franchise applicants and state and local governments to make substantial investments for the procurement of baseball franchises on the basis of false representations.

Paragraph 32 contains a list of corporations and individuals who have allegedly conspired with the appellees in furtherance of the violations stated in the complaint. Among those listed are Pacific Northwest Sports, Inc., the former owner of the Seattle Baseball franchise, the managing officers of each appellee-club member, and certain owners of Milwaukee, Wisconsin, radio and television stations.

Paragraphs 33–49, entitled "Acts and Programs in Furtherance of the Unlawful Combination and Conspiracy," allege that during the period from October, 1967, to March, 1970, the appellee-Amer-

---

* Honorable Malcolm M. Lucas, United States District Judge, Central District of California, sitting by designation.

ican League stated that it would give Seattle a baseball franchise if the people of King County provided a stadium and subsequently announced the award of a franchise to Pacific Northwest Sports, Inc., thereby inducing the expenditure of large sums of money by appellants, but that the League ultimately sold the franchise to the Milwaukee Brewers Baseball Club, Inc., contrary to all of its promises and representations to appellants. Paragraph 41 further alleges · that the franchise-holder and concessionaire-appellees entered a tying arrangement like that described in paragraph 29, which the appellees later learned could not be enforced in the State of Washington. Appellants finally allege that the appellees persisted in their plan to move the Seattle franchise to Milwaukee despite the "Carlson Group's" proposal, which conformed to requirements laid down by the appellees.

Appellants conclude their First Claim by alleging in paragraphs 50 to 53 that the appellees' activities violate the Washington State Constitution and the Washington Consumer Protection Act, and that the charging state, county or city has been damaged through the loss of business revenues and taxes.

The Fourth, Fifth and Sixth Claims, which incorporate many of the allegations of the First Claim, are alleged by the state, county, and city respectively, and are all based on a theory of fraud and breach of contract, or alternatively, promissory estoppel. The Seventh, Eighth and Ninth Claims, which also include many of the allegations stated in the First Claim, are again alleged by the state, county, and city respectively, and are based on the breach of a duty to avoid arbitrary and unreasonable infliction of injury. The Tenth, Eleventh, and Twelfth Claims, which again incorporate many of the allegations contained in the First Claim and are alleged by the state, county, and city respectively, are based on the breach of a third-party beneficiary contract.

In their prayer for relief appellants ask that damages and attorneys' fees be awarded, that damages alleged in the First, Second, and Third Claims be trebled as provided for in Revised Code of Washington § 19.86.090, and for further relief.

## II. *Federal antitrust claims.*

One ground for removal was that the case is one "founded on a claim of right arising under the . . . laws of the United States. . . . " (28 U.S.C. § 1441(b)), namely, the Sherman Antitrust Act (15 U.S.C. §§ 1ff.) The plaintiffs-appellants disclaim an intention to plead such a claim. They urge that they have charged only violations of the Constitution and the Consumer Protection Act of Washington (R.C.W. ch. 19.86). They argue that they have a right to choose whether to bring their action under that Constitution and Act, and that it is immaterial that the facts pleaded might also give rise to a claim under the Sherman Act. They point to paragraph 50 of the complaint, headed "Statutes Violated," as charging only violations of the Washington State Constitution and statutes. In support of their position, appellants cite cases stating that a plaintiff may elect a state remedy even though his claim also entitles him to a federal remedy. Prensa Grafica Cubana S. A. v. Osle, S.D.N.Y., 1961, 195 F. Supp. 636, 638; J. H. Smith Co. v. Jordan Marsh Co., D.Mass., 1958, 161 F. Supp. 659, 660; State of Wisconsin v. Milwaukee Braves, Inc., 1966, 31 Wis.2d 699, 144 N.W.2d 1. See generally Pan American Petroleum Corp. v. Superior Court, 1961, 366 U.S. 656, 663, 81 S.Ct. 1303, 6 L.Ed.2d 584; Commonwealth of Massachusetts v. McHugh, D.Mass., 1947, 71 F.Supp. 516, 520.

Appellees argue that the right to remove is governed by the "real nature" of the claim pleaded, and not the tag or label that appellants attach to it. They say that the presence of a federal question depends on whether "Federal law applies to and controls the case by its provisions, as brought into operation by the complaint." Pocahontas Terminal Corp. v. Portland Bldg. & Constr. Trade

Council, D.Me., 1950, 93 F.Supp. 217. See also Clinton v. Hueston, 5 Cir., 1962, 308 F.2d 908; Geo. D. Roper Corp. v. Local Union 16, S.D.Ohio, 1968, 279 F. Supp. 717; Prospect Dairy, Inc. v. Dellwood Dairy Co., N.D.N.Y., 1964, 237 F. Supp. 176; Central Metal Products, Inc. v. Inter'l Union, etc., E.D.Ark., 1961, 195 F.Supp. 70; Patriot-News Co. v. Harrisburg Printing Pressmen, M.D.Pa., 1961, 191 F.Supp. 568; O'Brien v. Goldman Sachs Trading Corp., S.D.N.Y., 1932, 1932–39 Trade Cases ¶55,014; Dougherty v. Michigan Bell Telephone Co., 1926, 235 Mich. 416, 209 N.W. 200. Appellees point to the many allegations of the complaint concerning the nationwide and interstate activities of the defendants, and to the specific reference to the Sherman Act and to "other applicable antitrusts statutes" in paragraph 29 of the complaint. These, they say, show the real nature of appellants' claims.

■ We find it unnecessary to try to reconcile the authorities relied upon by the parties. It has long been established that the *jurisdiction of a federal court over a case removed from a state court is derivative in nature.* As the Court stated in Lambert Run Coal Company v. B & O R. R. Co., 1922, 258 U.S. 377, 382, 42 S.Ct. 349, 351, 66 L.Ed. 671 "The jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction. If the state court lacks jurisdiction of the subject-matter or of the parties, the federal court acquires none, although it might in a like suit originally brought there have had jurisdiction." The Court reaffirmed this principle in General Investment Co. v. Lake Shore & Michigan Southern Ry. Co., 1922, 260 U.S. 261, 288, 43 S.Ct. 106, 117, 67 L.Ed. 244:

> "When a cause is removed from a state court into a federal court, the latter takes it as it stood in the former. A want of jurisdiction in the state court is not cured by the removal, but may be asserted after it is consummated."

The Court's most recent affirmation of this principle is Freeman v. Bee Machine Co., 1943, 319 U.S. 448, 451, 63 S. Ct. 1146, 87 L.Ed. 1509. *See also* Beckman v. Graves, 10 Cir., 1966, 360 F.2d 148, 150; Koppers Co. v. Continental Casualty Co., 8 Cir., 1964, 337 F.2d 499, 501–502; A. J. Curtis & Co. v. D. W. Falls, Inc., 3 Cir., 1962, 305 F.2d 811, 814; Meyer v. Indian Hill Farm, Inc., 2 Cir., 1958, 258 F.2d 287, 290; WSAZ, Inc. v. Lyons, 6 Cir., 1958, 254 F.2d 242, 244; Petroleum Carrier Corp. v. Carter, 5 Cir., 1956, 233 F.2d 402, 404; Block v. Block, 7 Cir., 1952, 196 F.2d 930, 933.

■ It is equally well established that the state courts lack subject matter jurisdiction of actions for violation of the federal anti-trust laws. The jurisdiction conferred on the federal courts by 15 U.S.C. § 15 is exclusive. In Blumenstock Bros. Advertising Ag'y v. Curtis Publishing Co., 1920, 252 U.S. 436, 40 S.Ct. 385, 64 L.Ed. 649, the Court, in considering a claim under the Sherman Act, indicated that:

> " . . . the controversy concerns a subject-matter limited by federal law, for which recovery can be had only in the federal courts. . . . " *Id.* at 441, 40 S.Ct. at 387.

The Court reaffirmed this proposition in Gen'l Investment Co. v. Lake Shore & Michigan Southern Ry. Co., *supra*, 260 U.S. at 287, 43 S.Ct. 106.

■ By putting these two principles together, we arrive at an interesting result. If a suit under the federal anti-trust laws is filed in a state court, it is removable under 28 U.S.C. § 1441(b). General Investment Co. v. Lake Shore & Michigan Southern Ry. Co., *supra*. However, the state court lacked subject matter jurisdiction. Therefore, because the federal court's removal jurisdiction is derivative, it must dismiss the case *following removal.* It has no more jurisdiction than the state court. This is the kind of legal *tour de force* that most laymen cannot understand, particularly in a case where the federal court not only has subject matter jurisdiction, but has exclusive subject matter jurisdiction. One would have thought that the

purpose of removal in such a case is to get the case out of the court that lacks jurisdiction to hear it and into the court that has jurisdiction, and to keep it in the latter court, so that it can be tried and a valid judgment can be entered.

Nevertheless, the Supreme Court approved this line of reasoning in Gen'l Investment Co. v. Lake Shore & Michigan Southern Ry. Co., *supra*, a case that had been removed from the state to federal court:

> "This suit was brought in a state court, and in so far as its purpose was to enjoin a violation of the Sherman Anti-Trust Act that court could not entertain it. The situation was the same in respect of the purpose to enjoin a violation of the Clayton Act.
>
> . . . . . .
>
> It follows that so much of the bill as based the right to relief on asserted violations of the Sherman Anti-Trust Act and the Clayton Act was rightly dismissed. . . . " (260 U.S. at 287–288, 43 S.Ct. at 117.)

The Eighth Circuit reached a similar result in a case involving the Miller Act, which has nothing to do with federal antitrust claims, but which does provide for exclusive federal jurisdiction. See Koppers Co. v. Continental Casualty Co., *supra*. In *Koppers*, the future Justice Blackmun stated:

> "Removal gives the federal court only derivative jurisdiction. This is no better than that possessed by the state court in which the action was begun. Thus, if jurisdiction is lacking in the state court in the first instance, it is not brought into being by the removal, even though the federal court to which the suit was removed would have had jurisdiction had the action originated there." (337 F.2d at 501–502.)

Dismissal was sustained.

The rule has been severely criticized by good lawyers. For example, Mr. Moore says:

> "With some logic, but indefensibly from the standpoint of practical judicial administration, the principle of derivative jurisdiction, as it pertains to subject-matter jurisdiction of the state court, has been applied so that *any* action, commenced in a state court, involving a matter over which the federal courts have exclusive jurisdiction, is subject to dismissal, after removal, for want of jurisdiction, even though the federal court would have jurisdiction of a similar case brought originally therein." 1A Moore, Federal Practice, ¶.157 [3], at 86 (2d ed. 1965.)

■ Whatever we think of it, the rule has been applied by the Supreme Court to antitrust cases. The problem, then, is how does it apply here? For purposes of this discussion, we will assume that appellees are correct in arguing that appellants have stated a claim or claims under the Sherman Act. It seems to follow that those claims should be dismissed. But there is a practical difficulty in doing that. The federal antitrust claims are not separately stated. They are inseparably intertwined with the state claims arising out of the same set of facts. And they are accompanied by other separately stated claims that are clearly not federal claims at all. Certainly the state claims should not be dismissed, and we know of no authority that would require that they be dismissed. The federal court not being allowed to proceed with the federal claims giving rise to its removal jurisdiction, the state claims should be remanded. The only practical way to do this is to remand the whole action. We think that both the statute and the cases permit this result.

Section 1447(c) of Title 28, U.S.C., contains the following provisions:

> "If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case . . . "

This section contains no provision requiring the federal court to dismiss all or a portion of an action that was re-

moved. In this respect, it differs from the predecessor section, 28 U.S.C. § 80 (1927 ed.) which did contain such a provision. That section, however, dealt with both removed cases and cases originally filed in the federal courts; the present section deals only with removed cases. We think that the present statute permits remand of the whole case, rather than dismissal of the federal antitrust claims, if any, and remand of the rest of the case. We find some support for this view in Weeks v. Fidelity and Casualty Co. of N. Y., 5 Cir., 1955, 218 F.2d 503. *See also* Pennsylvania Turnpike Comm'n v. McGinnes, E.D.Pa., 1959, 179 F.Supp. 578, 583, aff'd, 278 F.2d 330, 3 Cir., 1960, cert. denied, 1960, 364 U.S. 820, 81 S.Ct. 57, 5 L.Ed.2d 51.

■■ It is not an answer for appellees to argue, as they do, that the federal antitrust laws have preempted the field in such cases as this, so that appellants have no state law claim under the Washington Constitution and Consumer Protection Act. Federal preemption is a matter of defense to a state law claim, and not a ground for removal. Pan American Petroleum Corp. v. Superior Court, *supra*, 366 U.S. at 663, 81 S.Ct. 1303; Gully v. First Nat'l Bank, 1936, 299 U.S. 109, 116, 57 S.Ct. 96, 81 L.Ed. 70; Puerto Rico v. Russell & Co., 1933, 288 U.S. 476, 483, 53 S.Ct. 447, 77 L.Ed. 903; Williams v. First Nat'l Bank, 1910, 216 U.S. 582, 594, 30 S.Ct. 441, 54 L.Ed. 625; Big Apple Supermarkets, Inc. v. Dutto, E.D.N.Y., 1965, 237 F.Supp. 774; Acme Markets, Inc. v. Retail Store Employees Union Local 692, D.Md., 1964, 231 F.Supp. 566, 571; Jody Fair, Inc. v. Dubinsky, S.D.N.Y., 1964, 225 F.Supp. 695, 698; Prensa Grafica Cubana S. A. v. Osle, *supra*, 195 F.Supp. at 637; M & D Simon Co. v. R. H. Macy & Co., S.D. N.Y., 1957, 152 F.Supp. 212, 216; Monmouth Canning Co. v. Local Union 340, D.Me., 1956, 140 F.Supp. 304, 305; Allen v. Southern Ry. Co., W.D.N.C., 1953, 114 F.Supp. 72, 75.

### III. *The Bankruptcy Court Order.*

■ The appellees next contend that the present action challenges the validity of an order of a federal district court sitting in bankruptcy and thus raises a federal question. One searches the complaint in vain for even a mention of such an order, much less an attack upon it. The matter was brought into the case by appellees in their answer and in their petition for removal.

As is pointed out above, the Supreme Court has repeatedly declared that matters raised in this manner do not constitute federal questions for purposes of removal.

The appellee American League cites a number of cases to support its contention. *See* Deauville Associates v. Lojoy Corp., 5 Cir., 1950, 181 F.2d 5; South Dakota Central Ry. Co. v. Continental & Commercial Trust & Savings Bank, 8 Cir., 1919, 255 F. 941; First Nat'l Bank of Ceredo v. Society for Savings, 4 Cir., 1897, 80 F. 581; Odum v. Nat'l Carbon Co., E.D.N.Y., 1937, 21 F.Supp. 382; Cornue v. Ingersoll, D.Mass., 1909, 174 F. 666 aff'd 1 Cir., 1910, 176 F. 194; State ex rel. Attorney General v. Frost, 1902, 113 Wis. 223, 89 N.W. 915. But in all of these cases the federal court decree was attacked on the face of the plaintiff's complaint rather than by way of defense.

We also reject the appellees' argument based on 15 U.S.C. § 1291. They contend that allegations in appellants' complaint attacking league and club agreements relating to the televising of major league games on national networks give rise to a federal question, because Section 1291 exempts from the federal anti-trust laws agreements relating to the telecasting of sports contests. This contention, too, arises by way of defense, and thus cannot serve as the basis for federal jurisdiction for purposes of removal.

■ The final argument is scarcely worth mentioning. The appellees Sportservice Corporation and Washington

Sportservice, Inc. argue that appellants' prayer for relief, in which appellants request "such other and further relief as the Court may deem just," can be construed as asking for federal relief and thereby invoking federal jurisdiction. We are totally unpersuaded.

The order appealed from is reversed and the case is remanded to the District Court with directions to remand it to the State court.